UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DNA CONTRACTORS, INC., a Washington company, | CASE NO. C18-691RSM |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |
| v. | |
| AMIR AHMED, an individual resident of Texas, | |
| Defendant. | |

## I.  INTRODUCTION

This matter comes before the Court on Defendant's Motion to Dismiss Pursuant to FRCP Rules 12(b)(2) and 12(b)(6), and Alternatively, Motion to Compel Arbitration. Dkt. #6. Defendant argues that he does not have minimum contacts with Washington and that this Court does not have personal jurisdiction over him, that Plaintiff fails to adequately allege either of its claims, and that Plaintiff should, in any event, be compelled to arbitrate its claims. Plaintiff opposes the Motion. Dkt. #9. For the reasons stated below, the Court finds that it does not have personal jurisdiction over Defendant and grants Defendant's Motion to Dismiss.

ORDER – 1

## II. BACKGROUND[1]

Plaintiff initiated this action against Defendant in state court for: (1) "tortious interference with a business relationship" and (2) "conspiracy in restraint of trade," a violation of Washington's Consumer Protection Act (Chapter 19.86, Revised Code of Washington). Dkt. #1, Ex. A at ¶ 1. From August, 13, 2007, to June 30, 2015, Plaintiff had a contract with DISH Network LLC ("DISH") to "sell [DISH] services on a nationwide basis." *Id.* at ¶¶ 17, 24. Plaintiff competed with other entities contracting with DISH to sell DISH services. *Id.* at ¶ 14. Dish One Satellite LLC ("DishOne"), jointly owned by DISH and unknown individuals, is one such entity that contracts with DISH to sell DISH services on a nationwide basis. *Id.* at ¶¶ 11, 15–16. Plaintiff therefore competed with DishOne for customers. *Id.* at ¶ 18.

Defendant is DISH's Senior Vice President of Sales and in that capacity oversees nationwide sales of DISH services. *Id.* at ¶¶ 19–20. Defendant's compensation includes a portion of the profits generated by DishOne's sales of DISH services. *Id.* at ¶ 21. Defendant, acting in his own financial interest, convinced DISH to cancel Plaintiff's contract in order to increase DishOne's profits and, accordingly, Defendant's compensation. *Id.* at ¶¶ 22–23.

## III. DISCUSSION

The Court will first address Defendant's argument that the Court lacks personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004). Where, as here, the motion is based on written materials rather than an evidentiary

---

[1] The background is taken from Plaintiff's Second Amended Complaint, Dkt. #1, Ex. A, filed in the Whatcom County Superior Court for the State of Washington prior to being removed to this Court. Dkt. #1. The factual allegations are accepted as true for purposes of ruling on Defendant's Motion to Dismiss.

ORDER – 2

hearing, the plaintiff's pleadings and any affidavits need only make a prima facie showing of facts supporting personal jurisdiction. *Id.* Any conflicts over jurisdictional facts must be resolved in the plaintiff's favor. *Id.*

Pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), federal courts ordinarily follow state law to determine their jurisdiction over persons. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Washington's long-arm statute extends personal jurisdiction to the broadest reach that the United States Constitution permits. *Byron Nelson Co. v. Orchard Management Corp.*, 95 Wash.App. 462, 975 P.2d 555, 558 (Wash. Ct. App. 1999). The Court therefore must determine whether the exercise of jurisdiction comports with federal constitutional requirements. *See Easter v. Am. W. Fin.*, 381 F.3d 948, 960 (9th Cir. 2004).

The Due Process Clause protects a defendant's liberty interest by only subjecting a defendant to binding judgements in forums with which the defendant has established "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Thus, in determining personal jurisdiction, courts focus "on the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204 (1977).

Personal jurisdiction exists in two forms, general and specific. *Dole Food Co. v. Watts,* 303 F.3d 1104, 1111 (9th Cir. 2002). General jurisdiction exists over a non-resident defendant when there is "continuous and systematic general business contacts that approximate physical presence in the forum state." *Schwarzenegger*, 374 F.3d at 801. Here, Plaintiff does not appear to argue, and the record does not support, that Defendant is subject to general jurisdiction in Washington. Dkt. #9 at 7–9. The Court, therefore, needs only to consider specific jurisdiction.

ORDER – 3

To determine whether to exercise specific jurisdiction over a non-resident, the Ninth Circuit applies a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir. 1987)). The plaintiff has the burden of proving the first two prongs. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).

While a plaintiff can establish the first prong under either the "personal availment" analysis or the "purposeful direction" analysis, the Ninth Circuit generally applies the personal availment analysis in suits sounding in contract and the purposeful direction analysis in suits sounding in tort. *Schwarzenegger*, 374 F.3d at 802–03. The personal availment analysis focuses primarily on a defendant's actions within the forum state. *Id.* at 802. Because Plaintiff's claims sound in tort[2] and because Plaintiff has not alleged that Defendant undertook any activities in Washington, the Court finds it appropriate to utilize the purposeful direction analysis.

To determine whether a defendant purposefully directed activities to a forum, courts consider a three-part "effects test." *Schwarzenegger*, 374 F.3d at 803. A defendant purposefully

---

[2] The parties do not address the nature of Plaintiff's Consumer Protection Act claims. However, Plaintiff's Consumer Protection Act claims are more akin to tort claims, as they do not arise out any agreement between the parties. *See Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 233 (1995) ("The basis for a contract action is the parties' agreement."); *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) ("Because [plaintiff] has alleged copyright infringement, a tort-like cause of action, purposeful direction 'is the proper analytical framework.'"). Further, the same underlying out-of-forum actions are at the heart of Plaintiff's tort and Consumer Protection Act claims.

ORDER – 4

directs activities at a forum if he: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (quoting *Dole Food Co.*, 303 F.3d at 1111). The Supreme Court has made clear that the determination of personal jurisdiction should focus on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

In this case, Plaintiff clearly alleges an intentional act in so far as Defendant caused DISH to terminate its contract with Plaintiff. Defendant's actions, however, were not "expressly aimed at" Washington. Plaintiff has not alleged that Defendant ever "traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to" Washington and "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 289, 285. While the effects of Defendant causing Plaintiff's contract to be terminated may have been felt by Plaintiff in Washington, Defendant's action in doing so was not expressly aimed at Washington. The result would have been the same whether Plaintiff was located in Arizona, New York, or any other state.

This conclusion is further required by the Ninth Circuit's controlling decision in *Picot v. Weston*. 780 F.3d 1206 (9th Cir. 2015). There, a Michigan resident formed an oral contract with a California resident and a Nevada resident to develop technology and providing that any sale of the technology would entitle the Michigan resident to a portion of the proceeds. *Id.* at 1209. When the California and Nevada residents sold the technology and refused to share the profits, the Michigan resident threatened litigation, causing the buyer to stop payments to the sellers. *Id.* at 1210. The California resident sued for intentional interference with the sales contract, in addition to other claims. *Id.* at 1210–11. The Ninth Circuit, considering *Walden*, concluded that

ORDER – 5

the Michigan resident's actions taking place outside of California, but causing a loss of funds to the California resident was not "expressly aimed" at California because the loss would have been suffered in whatever state the California resident happened to reside. *Id.* at 1214–15.

*Picot* is directly controlling. Defendant's actions took place outside of Washington. While those actions resulted in Plaintiff losing out financially on a business expectancy in Washington, the loss only occurred in Washington because Plaintiff was located in Washington. Plaintiff's injury "is entirely personal to [it] and would follow [it] wherever [it] might choose to" reside. *Id.* at 1215. Defendant's actions therefore were not expressly aimed at Washington.

Relying on pre-*Walden* cases, Plaintiff argues that Defendant knew that it resided in Washington and that some of its sales occurred in Washington and that Defendant intended to impact those sales. But the Supreme Court has specifically rejected finding personal jurisdiction from the defendant's knowledge of the plaintiff's "strong forum connections" and "foreseeable harm." *Walden*, 571 U.S. at 289. Notably, Plaintiff has not alleged that Defendant intended to gain an advantage for DishOne in Washington.[3, 4] Rather, both Plaintiff and DishOne were

---

[3] Though not alleged in the Complaint, Plaintiff argues that Defendant not only caused DISH to terminate Plaintiff's contract, but also the contracts of "numerous other successful Retailers that competed with DishOne." Dkt. #9 at 3. While the Court does not rely on this argument, it further demonstrates that Defendant's actions were not expressly aimed at Washington. Plaintiff alleges that Defendant sought to eliminate competition, no matter its location, to increase DishOne's profits and Defendant's compensation. *Id.* Nowhere does Plaintiff allege that Defendant was motivated by any plan to increase DishOne's presence within Washington—as opposed to the national market. *Cf. Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F.3d 1082 (9th Cir. 2000) (applying a pre-*Walden* effects test and finding jurisdiction in California because letter sent from Georgia to Virginia "individually targeted" a plaintiff doing business almost exclusively in California); *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191 (9th Cir. 1988) (out of state actions were "expressly calculated to cause injury in California" as part of "an event within a sequence of activities designed to use California markets for" out of state actor's benefit).

[4] Even so, DishOne's activities within Washington do not alone support personal jurisdiction over Defendant. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (noting that requirement of personal jurisdiction must be met as to each defendant over whom the court exercises

ORDER – 6

national sellers. Dkt. #1, Ex. A at ¶¶ 15, 17. While termination of Plaintiff's contract with DISH impacted Washington sales, it equally affected Plaintiff's sales in other states. The impact and contacts from Defendant's actions were merely "random, fortuitous, or attenuated" with regard to Washington. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Because Defendant's actions were not "expressly aimed" at Washington, personal jurisdiction fails and the Court cannot properly exercise jurisdiction.

IV. CONCLUSION

Having reviewed Defendant's Motion, along with the remainder of the record, the Court hereby finds and ORDERS:

1. The Motion to Dismiss Pursuant to FRCP Rules 12(b)(2) and 12(b)(6), and Alternatively, Motion to Compel Arbitration (Dkt. #6) is GRANTED.

2. Plaintiff's claims are DISMISSED.

3. This matter is CLOSED.

Dated this 17 day of July, 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

---

jurisdiction); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) (noting that jurisdiction over corporation did not establish jurisdiction over individual publisher, editor, and owner of the corporation).

ORDER – 7